**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

In re:

MAJOR MODEL MANAGEMENT INC.,

                              Debtor.

-------------------------------------------------------X

**FOR PUBLICATION**

Chapter 11

Subchapter V

Case No. 22-10169 (MG)

## MEMORANDUM OPINION AND ORDER DENYING
## MOTION TO FILE A CLASS PROOF OF CLAIM

*A P P E A R A N C E S :*

THE DUGGER LAW FIRM, PLLC
*Attorneys for Jasmine Burgess, et. al.*
Gotham Center
28-07 Jackson Avenue, 5th Floor
Long Island City, NY 11101
By:    Cyrus E. Dugger, Esq.

NORRIS MCLAUGHLIN, P.A.
*Attorneys for the Debtor*
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
By:    Melissa A. Pena, Esq.
       Anthony D'Elia, Esq.

HEIDI J. SORVINO, ESQ.
*Subchapter V Trustee*
White & Williams LLP
7 Times Square, Suite 2900
New York, NY 10036
By:    Heidi J. Sorvino, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The issue pending before the Court is whether to permit a creditor to file a class proof of claim under Rule 7023 ("Rule 7023") of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). Class proofs of claim in bankruptcy cases are an exception to the normal procedures in bankruptcy cases that require individual creditors to file separate proofs of claim. If a creditor agrees with the scheduled amount of a claim and it is not listed as disputed, contingent, or unliquidated, no proof of claim needs to be filed; the claim is deemed allowed and will be entitled to a distribution in any confirmed plan of reorganization. *See* FED. R. BANKR. P 3003(c)(2) (detailing who must file a proof of claim).

Bankruptcy courts retain discretion to permit class proofs of claim pursuant to Rule 7023. But applying Rule 7023 to permit class proofs of claim is not an absolute right; many of the policy factors supporting class actions are absent in bankruptcy proceedings—specifically, the costly barriers to litigation are reduced in the claims allowance process (i.e., proof-of-claim forms are accessible, free and easy to fill out, and a claimant does not need to obtain counsel to submit a proof of claim). Many courts have observed that class certification may be less desirable in bankruptcy than in ordinary civil litigation. *See In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 621 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) (quoting FED. R. CIV. P. 23(b)(3)) (finding that plaintiffs could not show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"); *see also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005) (noting that "superiority of the class action vanishes when the other available method is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost") (quotation marks omitted). The bankruptcy claims resolution process allows creditors

to assert claims cheaply and efficiently in a single forum without the expense of retaining

counsel unless the creditor chooses to do so.  A bankruptcy court must decide in the exercise of

discretion whether a class proof of claim would be superior to the claims allowance process.

In this case, the Court concludes for the reasons explained below that the creditors

holding disputed, contingent or unliquidated claims must file separate proofs of claim and, unless

consensually resolved, any contested issues regarding their claims must be resolved in the claims

allowance process.  As explained below, the Court **DENIES** the pending motion.

## I.    <u>BACKGROUND</u>

### A.  The Motion for Leave to File a Class Proof of Claim

Pending before the Court is the motion ("Motion," ECF Doc. # 74-1) of Jasmine Burgess

("Burgess"), seeking entry of an order pursuant to Rule 7023 and Rule 9014 of the Bankruptcy

Rules, and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), authorizing Burgess to

file a class proof of claim against Major Model Management, Inc. ("Major Model" or the

"Debtor") with respect to her late payment claim and her breach of fiduciary duty claim against

the Debtor.  Burgess asserted those claims in a prepetition lawsuit, *Burgess v. Major Model*

*Management*, No. 20-cv-2816 (the "*Burgess* Litigation"), currently pending in the District Court

for the Southern District of New York ("District Court").  The *Burgess* Litigation names Major

Model and its President, Guido Dolci ("Dolci"), as defendants.  In support of the Motion,

Burgess filed a declaration by her attorney Cyrus E. Dugger ("Dugger").  ("Dugger Declaration,"

ECF Doc. # 75.)  The operative second amended complaint from the *Burgess* Litigation is

annexed to the Dugger Declaration.  ("Second Amended Complaint," ECF Doc. # 75-1, Ex. A.)

On May 5, 2022, the Debtor filed an objection.  ("Objection," ECF Doc. # 79.)  In

support of the Objection, the Debtor filed two declarations: (i) a declaration by Anthony P.

D'Elia (the "D'Elia Declaration," ECF Doc. # 80), which includes the second amended

complaint from the case *Stephanie Hoffman v. Major Model Management Inc.*, No. 20-cv-06941

(the "*Hoffman* Proceeding") pending in the District Court (ECF Doc. # 80-1, Ex. A); and (ii) a

declaration by Debtor's president, Dolci ("Dolci Declaration," ECF Doc. # 81). Burgess's

contract with the Debtor is attached to the Dolci Declaration as Exhibit F ("Burgess Contract,"

ECF Doc. # 85-6, Ex. F) and a form modeling contract used by the Debtor for women models as

Exhibit G ("Women Form Modeling Contract," ECF Doc. # 85-7, Ex. G).

On May 9, 2022, Burgess filed a reply to the Objection ("Reply," ECF Doc. # 84), and an

additional declaration of Dugger. ("Supplemental Dugger Declaration," ECF Doc. # 85.) The

following relevant exhibits were annexed to the Supplemental Dugger Declaration: a unisex form

modeling contract used by the Debtor during the class period ("Unisex Form Modeling

Contract," ECF Doc. # 85-2, Ex. B), emails produced to Burgess discussing the release of her

contract from the Debtor ("Burgess Contract Email," ECF Doc. # 85-4, Ex. D), damages

calculations concerning amounts owed to models based on a Quickbooks Open Balance Report

produced in the *Burgess* Litigation ("Open Balance Report," ECF Doc. # 85-5, Ex. E), a list

concerning the number of models with foreign addresses (ECF Doc. # 85-6, Ex. F), a table of

dates on which the Debtor received payment for several invoices (ECF Doc. # 85-6, Ex. G),

affidavits of other models complaining about the Debtor's non-payment ("Model Affidavits,"

ECF Doc. # 85-7, Ex. H), the CV of Burgess's accounting expert (ECF Doc. # 85-9, Ex. J), and

an example of the "model statements" the Debtor provided to Burgess (ECF Doc. # 85-10, Ex.

K).

The Court held a hearing on the Motion on May 12, 2022. ("Transcript," ECF Doc. #

88.) During the hearing, the Court directed Debtor's counsel to provide supplemental

declarations addressing the service of the Bar Date Order to putative members of the proposed

class.  (Transcript at 36:21–24; 37:4–9.)  On May 20, 2022, the Debtor filed the following supplemental declarations: (i) a supplemental Dolci declaration ("Supplemental Dolci Declaration," ECF Doc. # 90), (ii) a declaration of Jessica G. Berman, a director of Kroll Restructuring Administration LLC ("Kroll") ("Berman Declaration," ECF Doc. # 90-1), which contained a list of creditors whose mailed packages were returned as undeliverable; and (iii) a supplemental declaration of Anthony P. D'Elia ("Supplemental D'Elia Declaration," ECF Doc. # 90-2).

After receiving the Berman Declaration and the Supplemental D'Elia Declaration, the Court directed Debtor's counsel to provide further supplemental declarations addressing additional questions the Court had regarding notice and the claims of putative class members. ("May 27 Order," ECF Doc. # 92.)  In response, the Debtor filed the third Dolci declaration ("Third Dolci Declaration," ECF Doc. # 94) and the third D'Elia declaration ("Third D'Elia Declaration," ECF Doc. # 95).

### B.  Procedural Background and the *Burgess* Litigation

On February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for chapter 11 relief under Subchapter V.  (ECF Doc. # 1.)  On March 10, 2022, the Court granted the Debtor's motion to assume 35 of its current models' modeling contracts, along with the cure amounts in order to assume the contracts.  (ECF Doc. # 37.)  On April 20, 2022, the Court entered: (i) an order ("Bar Date Order," ECF Doc. # 67) setting the bar date as June 6, 2022 ("Bar Date"), and (ii) an order appointing Kroll as the Debtor's claims agent to administer service (ECF Doc. # 68).  The Bar Date Order specifies that "a copy of the notice . . . shall be deemed adequate and sufficient if served by first-class mail at least thirty-five (35) days prior to the Bar Date."  (Bar Date Order at 4.)  The Bar Date Order did not require publication notice of the Bar Date in a major newspaper or trade publication.

On February 26, 2022, the Debtor filed its schedules of creditors who have unsecured claims. (ECF Doc. # 30.) This was amended several times (*see* ECF Doc. ## 34, 51, 57, 64) with the most recently amended version filed on April 21, 2022. ("Amended Schedules," ECF Doc. # 70.)

On April 3, 2020, prior to the Petition Date, Burgess commenced the *Burgess* Litigation against the Debtor and Dolci in the District Court. (Motion at 8.) Burgess amended the complaint twice to include (i) class-wide claims alleging independent contractor misclassification under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), (ii) individual retaliation claims under FLSA and NYLL for a retaliatory lawsuit, and (iii) a class-wide breach of fiduciary duty claim under New York common law. (*Id.*)

On March 16, 2022, Burgess moved this Court to lift the stay to permit her to prosecute the *Burgess* Litigation in the District Court against the Debtor, thereby bypassing the bankruptcy claims allowance process. ("Lift Stay Motion," ECF Doc. # 40.) Burgess asserted that the *Burgess* Litigation was ready for a motion for summary judgment and would have been ready for trial but for the Debtor dragging its feet in responding to discovery requests and court orders. (Lift Stay Motion at 11–16.) A hearing was held on April 21, 2022, and the Court denied the Lift Stay Motion without prejudice. (ECF Doc. # 69.)

### C. Debtor's Business Model

The Debtor's business model is as follows: First, the Debtor asks a model whether she would like to handle a job for a customer, typically via an email confirming the job's rate. (Dolci Decl. ¶ 9.) Second, the Debtor issues an invoice to the customer for work performed by the model, which is set forth on the Debtor's Quickbooks (both as an open invoice and on the model's account). (Objection at 14; Dolci Decl. ¶ 10.) Third, the Debtor receives payment from the customer and the Debtor subtracts its 20% fee plus other fees advanced on behalf of the

model.  (Objection at 14; Dolci Decl. ¶ 11.)  Fourth, the Debtor generally remits payment to the

model three weeks from its receipt from the customer.  (Dolci Decl. ¶ 12.)  The Debtor typically

advises the model when payment is received from the client on a weekly basis, and models

commonly inquire about payment.  (*Id.* ¶ 13.)  The Debtor states that there are times when a

payment from a customer is not promptly remitted to a model, often due to the model changing

their bank account information without informing the Debtor.  (*Id.* ¶ 14.)

### D.  The Proposed Classes

Burgess proposes to file and seek certification of a class proof of claim as defined in the

Second Amended Complaint.  (Motion at 13.)  She proposes two classes which have purported

causes of action for breach of fiduciary duty against the Debtor: (1) a class seeking equitable

remedies, defined as persons who signed modeling contracts from April 3, 2014 to January 1,

2020, which the Debtor estimates as approximately 465 models; and (2) a class seeking

monetary remedies, defined as persons who signed modeling contracts from April 3, 2017 to

January 1, 2020, which the Debtor estimates as approximately 185 models.  (*Id.*; *see also*

Objection at 11.)

Burgess asserts that she and the respective class members are entitled to the equitable

remedy of: (1) a constructive trust of the approximately $1 million that is currently owed to

them; (2) payment of disgorgement of Debtor's ill-gotten profits/gains because of its breach of

fiduciary duty for (at least) the approximately $1 million amount plus 9% interest; and (3)

punitive damages of at least the same amount as actual damages.  (Motion at 17, 19.)

Burgess represents that both causes of action are based on the fiduciary duty the Debtor

owed to models which arose from power of attorney clauses in the Debtor's form modeling

agreement.[1]  (*Id.* at 11.)  Burgess argues that because the Debtor made no payment and/or late

payments to its models, the Debtor had breached its fiduciary duty.  (*Id.*)  Burgess asserts that

sources supporting that the Debtor owed a fiduciary duty to Burgess and the putative class

include: (i) the *Hoffman* Proceeding, where the Debtor was sued over a data breach of models'

personal identifiable information ("PII") and Judge Swain concluded that the complaint in that

case adequately alleged that the attorney-in-fact relationship created by the contracts between

Major Model and the models created a fiduciary duty protecting the models' PII from disclosure

to third parties (*id.* at 10–11);[2] (ii) the Debtor's compensation policies (*id.* at 12); and (iii) the

Debtor's collection of commission fees (*id.* at 13).

---

[1]     Burgess represents that certain form modeling agreement provide:

> [The Debtor] is hereby authorized and empowered to be Model's attorney-in-fact
> in all matters . . . approving [Plaintiff] and permitting the copyright, license, use
> and publication of [her] name, photograph, likeness and voice in connection with
> [her] Services; (ii) signing bills of sale and photographic and other releases for
> [her] in connection with the foregoing; (iii) ***collecting and receiving sums paid
> to [her] in connection with [her] Services; (iv) endorsing [her] name upon and
> depositing into accounts or cashing any and all checks payable to [her] in
> connection with [her] Services;*** (v) deducting from such deposits all sums owing
> to [Debtor] . . . .; and (vi) enforcing and protecting [her] rights with respect to
> parties with whom [she] . . . had . . . contractual dealings . . . in such manner as
> [Debtor] deem[ed] appropriate by, among other means, demanding, suing for
> collecting, recovering, and receiving, on [her] behalf, all money, interest and other
> times due [her] or belonging to [her].

(Motion at 9 (citing Second Amended Complaint ¶ 146).)

[2]     Burgess cites the holding of an opinion in the *Hoffman* Proceeding, which provides, in relevant part,

> To the extent Defendant's motion could be construed to separately seek dismissal
> of Plaintiff's breach of fiduciary claim for failure to plausibly allege a fiduciary
> duty, the Court finds that duty alleged adequately in Plaintiff's assertion that the
> attorney-in-fact relationship created by the contract imposed on Defendant a
> "fiduciary duty requiring reasonable care, undivided loyalty, confidentiality, full
> disclosure, and a duty to account", and that Plaintiff's provision of her PII to
> Defendant resulted in a "power imbalance, which placed Plaintiff [ ] in a position
> where [her] trust might be abused by [Defendant]", in light of Daly and its
> progeny, as well as the "fiduciary duties that courts have historically imposed on
> attorneys-in-fact.

(Motion at 10 (citing *Hoffmann v. Major Model Mgmt.*, No. 20-6941, 2022 WL 992795, at \*5 n.5 (S.D.N.Y. Mar.
31, 2022) (quoting the amended class action complaint)).)  But assuming such a fiduciary duty exists protecting PII
from disclosure, that would not necessarily establish a fiduciary duty supporting Burgess' claims regarding delay in

### E.  The Proposed Plan of Reorganization

On May 6, 2022, the Debtor filed its proposed plan of reorganization.  ("Plan," ECF Doc.

# 83.)  The Debtor asserts its Plan proposes to pay administrative expenses and priority claims

from funds on hand as of the Plan's effective date.  (Objection at 10.)  The Debtor states that it

will pay allowed unsecured claims from available cash flow generated by the Debtor's

operations over a period of three years, and, assuming the Debtor's projections are correct,

creditors should receive payment of 100% of their allowed claims.  (*Id.*)

### F.  The Supplemental Declarations

#### 1.  May 20, 2022 Declarations

Dolci states that the Debtor's Schedules identify 909 general unsecured creditors with an

aggregate claim amount of $11,421,855.  (Supp. Dolci Decl. ¶ 3.)  Of those 909 creditors, the

Debtor identified: (i) 156 creditors with undisputed claims aggregating to $475,977.10, (ii) 137

creditors with disputed claims aggregating to $10,945,877.90, and (iii) 616 creditors who were

identified for notice purposes—the majority of whom are models who are part of the putative

class in the *Burgess* Litigation.  (*Id.* ¶¶ 3–4.)  The Debtor states that most of the disputed claims

are (i) claims filed by Jasmine Burgess, individually and on behalf of a putative class in the

*Burgess* Litigation and (ii) claims filed by Stephanie Hoffman, individually and on behalf of a

putative class in the *Hoffman* Proceeding.  (*Id.* ¶ 4.)

The Debtor states that in addition to the claims of Burgess and Hoffman, it disputes the

claims of 131 other models with an aggregate amount of $386,721.66.  (*Id.* ¶ 5.)  Of this amount,

the Debtor disputes the following claims: (a) 61 models, whose claims aggregate to $66,447.06,

which were not paid by the Debtor's customers; (b) 11 models, whose claims aggregate to

---

payments due to models, which are essentially breach of contract claims.  Burgess' contract and other contract forms
used by the Debtor contain provisions regarding the timing of payments.  *See, infra,* at 25.

$56,244.87, who breached their contract with the Debtor; (c) 4 models, whose claims aggregate to $8,420.35, as the model and the Debtor reached a settlement agreement which released the amounts; (d) 8 models, whose claims aggregate to $13,587.45, who the Debtor is unable to pay due to expired visas; and (e) 47 models, whose claims aggregate to $242,021.93, as the work performed by these models occurred from approximately 2009 to 2019 and the models did not collect payment despite the Debtor's attempts to communicate with them.  (*Id.*)

The Court inquired regarding amounts totaling $826,851.84 identified on the Open Balance Report which references the models who were not paid by the Debtor as of December 31, 2019.  (*Id.* ¶ 6.)  Dolci asserts that, as of December 31, 2019, the Debtor had open invoices of $358,460.00 due from its customers and had $63,216.00 in its bank account to be paid to the models.  (*Id.* ¶ 6.)  Dolci notes the Debtor has not reconciled the specific jobs of each model referenced on the Open Balance Report in conjunction with outstanding invoices because this requires an audit via an outside accountant due to the Debtor's accounting methods.  (*Id.*)

Dolci notes that of the $826,851.84 that was due to models by December 31, 2019, $453,188.61 was paid to the models in early 2020.  (*Id.* ¶ 7.)  Dolci lists several categories (the "Nonpayment Categories") which consisted of the remaining $373,663.23 that was not paid for the following reasons: (a) $44,137.32 was monies that models released the Debtor from paying via settlements but was not removed from the Debtor's books and records; (b) $9,469.86 was not paid to models as their visas expired; (c) $90,954.87 was not paid as the Debtor maintains that these models breached their contract; (d) $197,101.72 was not paid as the Debtor could not locate the models; and (e) $32,000 was not paid as the Debtor was unable to collect these amounts from its customers.  (*Id.*)

Kroll states that as of the close of business on May 17, 2022, 136 creditors did not receive a successfully delivered mailed package of the Bar Date Order. (Berman Decl. ¶ 4.) Kroll states that, per its standard operating procedures, it: (a) re-serves any mailed packages which are returned with a forwarding address; and (b) when a mailed package is returned as undeliverable with no forwarding address, if the party in question is an entity and the party is listed on the Debtor's schedules of assets and liabilities, Kroll conducts internet research to locate an updated address and then re-serves at that new address if one is found. (*Id.* ¶ 6.)

Mr. D'Elia states that on May 11, 2022, Debtor's counsel emailed notice of the Bar Date to 529 models out of 842 models identified on the Debtor's Schedules. (Supp. D'Elia Decl. ¶ 3.) The email addresses used were from the Debtor's records. (*Id.*) Mr. D'Elia states that only twenty of the notices sent via email were returned as undeliverable or rejected. (*Id.* ¶ 5.) Three of the notices sent via email were rejected because the models' mailboxes were full. (*Id.*)

Mr. D'Elia notes that Kroll served 1,138 copies of the Bar Date Order. (*Id.* ¶ 6.) Of those mailings, 136 were returned as undelivered but the Debtor had email addresses for 96 of these 136 creditors connected with undelivered packages. (*Id.*) Debtor's counsel sent them email notice on May 11, 2022. (*Id.*)

2. June 6, 2022 Supplemental Declarations

On May 27, 2022, the Court directed the Debtor to file further declarations by June 6, 2022 to account for (1) the last known mail and email address for models who are scheduled but who did not receive notice of the Bar Date Order, (2) the names of the 136 creditors whose packages were returned as undelivered, and whether the claim is scheduled as disputed, and the reasons the claim is disputed, (3) the names of the 40 creditors who the Debtor does not have email addresses for and who did not receive notice of the Bar Date Order, and (4) further clarifications regarding the Nonpayment Categories listed in the Supplemental Dolci

Declaration.  (ECF Doc. # 92.)  On June 6, 2022, the Debtor filed the Third D'Elia Declaration

and the Third Dolci Declaration.

The Third D'Elia Declaration responded to the Court's inquiries via two annexed

spreadsheets.  (Third D'Elia Decl. ¶¶ 4–5.)  The first spreadsheet ("First D'Elia Spreadsheet"),

annexed as Exhibit A, responded to the first and second paragraphs of the May 27 Order.  (*Id.* ¶

4.)  The First D'Elia Spreadsheet indicates 136 creditors who were sent notice of the Bar Date

that were returned as undeliverable.  (*Id.* at 4–6.)  The spreadsheet shows that (i) there are 24

models with undisputed claims totaling $55,896.85 who did not receive mailed notice of the Bar

Date Order; and (ii) there are 20 models with disputed claims totaling $123,927.35 who did not

receive mailed notice of the Bar Date Order.[3]  (*Id.*)  The First D'Elia Spreadsheet also indicates

that the Debtor does not have email addresses for 3 of the 20 models with disputed claims who

did not receive mailed notice of the Bar Date Order.  (*Id.*)  Those 3 models are included in the

second spreadsheet ("Second D'Elia Spreadsheet") annexed as Exhibit B.

The Second D'Elia Spreadsheet responded to the third paragraph of the May 27 Order.

(*Id.* ¶ 5.)  The Second D'Elia Spreadsheet indicates 40 models who did not receive notice of the

Bar Date Order via mail and for whom the Debtor does not have email addresses.  (*Id.* at 8.)  Of

those 40 models, only three models have disputed claims—valued at $200; $2,400; and $12,000,

totaling to $14,600—with the reason for the dispute being that "Debtor could not locate model."

(*Id.* at 8.)  The remaining 37 models on the Second D'Elia Spreadsheet include models who were

scheduled "[f]or notice purposes only."  (*Id.*)

The Third Dolci Declaration responded to the fourth paragraph of the May 27 Order via a

spreadsheet ("Dolci Spreadsheet") attached as Exhibit A.  (Third Dolci Decl. ¶ 3.)  The Dolci

---

[3]     It should be noted that creditors may file claims that exceed the amounts scheduled by the Debtor.

Spreadsheet provides a substantive breakdown of which models are included in the Nonpayment

Categories listed in the Supplemental Dolci Declaration, what was owed to that model as of

December 31, 2019, whether the model was identified on the Debtor's schedules, the claim

amount on the schedules, and whether the claim was disputed.  (*Id.* at 4–9.)  The total amount for

all Nonpayment Categories combined is $294,143.33 for amounts owed as of December 31,

2019 per the Debtor's books and records.  Nonpayment Category (a) totals $44,137.32 for

monies owed to models released via settlements and includes 7 models, with 3 models listed as

having undisputed claims totaling $15,088.30 and the remaining 4 models as having disputed

claims totaling $29,770.31.  (*Id.* at 4.)  Nonpayment Category (b) totals $9,420.79 for money not

paid due to expired visas and includes 6 models, with 1 model having an undisputed claim

totaling $1,368.34 and the remaining 5 models having disputed claims totaling $8,052.45.  (*Id.*)

Nonpayment Category (c) totals $90,954.87 that was not paid due to the model's alleged

breached of contract and includes 13 models (one of which is Burgess) all of whom have

disputed claims.[4]  (*Id.*)  Nonpayment Category (d) totals $197,101.72 that was not paid due to the

Debtor being unable to locate the models and includes 89 models, with only 1 model's claim

being considered undisputed and unscheduled, totaling to $5,220.00, and the remaining 88

model's claims being scheduled as disputed totaling to $191,881.72.  (*Id.* at 5–7.)  Nonpayment

Category (e) totals $32,000 that was not paid due to the Debtor being unable to collect these

amounts from its customers and includes 41 models, including 5 models with undisputed claims

totaling $1,454.43 and 36 models with disputed claims totaling $30,545.57.  (*Id.* at 7–9.)

---

[4]        Mr. Dolci notes that Burgess' claim on their schedules includes the putative class claims.  (Third Dolci
Declaration at 9.)

## II.  LEGAL STANDARD

### A.  Application of Rule 23 in Contested Matters

Rule 7023 "expressly allows class certification in adversary proceedings by incorporating

Federal Rule of Civil Procedure 23." *In re MF Glob. Inc.*, 512 B.R. 757, 761 (Bankr. S.D.N.Y.

2014) (citing FED. R. BANKR. P. 7023.)  "Application of Rule 23 is extended to contested matters

by Bankruptcy Rule 9014 which gives the Court discretion to apply Rule 23 to contested matters,

including claims objections." *In re MF Glob.*, 512 B.R. at 762.

"Although the Bankruptcy Code and Rules give no express guidance for the court's

exercise of [its] discretion" in applying Rule 7023, "a pervasive theme is avoiding undue delay in

the administration of the case.  It follows that a court sitting in bankruptcy may decline to apply

Rule 23 if doing so would . . . 'gum up the works' of distributing the estate." *In re Ephedra*

*Prods. Liab. Litig.*, 329 B.R. at 5 (quoting *Woodward & Lothrop Holdings Inc.*, 205 B.R. 365,

376 (Bankr. S.D.N.Y. 1997)).  "The exercise . . . is really a two-step process: First, the Court

must exercise its discretion whether to apply Rule 23 to the proposed class claim.  Second, the

Court must determine whether the proposed class claim satisfies the requirements of Rule 23 for

class certification." *In re MF Glob.*, 512 B.R. at 763 (citing *In re Motors Liquidation Co.*, 447

B.R. 150, 157 (Bankr. S.D.N.Y. 2011); 10 COLLIER ON BANKRUPTCY ¶ 7023.01 (16th ed. 2013)).

In addressing the second step, "[t]he party seeking class certification must satisfy the four

requirements under Federal Civil Rule 23(a), and one of the subparagraphs of Rule 23(b)." *In re*

*Musicland Holding Corp.*, 362 B.R. 644, 652 (Bankr. S.D.N.Y 2007).

### B.  *Musicland* Factors in Deciding Whether to Apply Rule 23

Several factors (the "*Musicland* Factors") inform a court's decision whether to extend the

application of Rule 23 to a proof of claim, including: "(1) whether the class was certified pre-

petition; (2) whether the members of the putative class received notice of the bar date; and (3)

whether class certification will adversely affect the administration of the estate." *Id.* at 654–55

(citations omitted).  Some courts have focused on the first two factors only—i.e., prepetition

certification and notice of the bar date.  *See In re Bally Total Fitness*, 402 B.R. at 620 (citations

omitted) ("The filing of a class proof of claim is consistent with the Bankruptcy Code generally

in two principal situations: (i) where a class has been certified prepetition by a non-bankruptcy

court; and (ii) where there has been no actual or constructive notice to the class members of the

bankruptcy case and Bar Date."), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009).

### C. Rule 23 Requirements for Class Certification

Under Rule 23(a), four prerequisites must be met for a suit to proceed as a class action:

"(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class." FED. R. CIV. P. 23(a).  Federal courts must

"conduct a rigorous analysis to determine whether the Rule 23 requirements have been satisfied

prior to certifying a class."  *In re Bally Total Fitness*, 402 B.R. at 621 (internal quotation marks

omitted).

### 1. Numerosity

"[N]umerosity is presumed when the class has at least 40 members."  *In re MF Glob.*,

512 B.R. at 765 n.6 (citing *Cons. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.

1995)) *See also In re BGI*, 465 B.R. 365, 375 (Bankr. S.D.N.Y. 2012) (citing *Robidoux v.

Celani*, 987 F2d 931, 935–36 (2d Cir. 1993) (noting that class size need not be specified, but it is

"presume[d] that joinder is impracticable where the prospective class consists of 40 members or

more")).

### 2.   Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 544 U.S. 338, 349–50 (2011) (internal quotation marks omitted).   "The requirement for establishing commonality sufficient to satisfy Rule 23(a) is quite low." *In re MF Glob.*, 512 B.R. at 766.   "Commonality is satisfied where a single issue of law or fact is common to the class." *In re IndyMac Mortgage–Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012).   *See also Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002) (stating that "the commonality requirement of Rule 23(a)(2) is usually a minimal burden for a party to shoulder").   "A court may find a common issue of law even though there exists some factual variation among class members' specific grievances." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (internal quotation marks omitted).

### 3.   Typicality

"Typicality . . . requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Connaught Grp. Ltd.*, 491 B.R. 88, 94 (Bankr. S.D.N.Y. 2013) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).   "'To meet the typicality requirement, the putative class representatives must establish the bulk of the elements of each class members' claims when they prove their own.'" *In re FIRSTPLUS Financial, Inc.*, 248 B.R. 60, 75 (Bankr. N.D. Tex. 2000) (quoting *Durret v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993)).   *In re Drexel Burnham Lambert Grp. Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (citations omitted) ("Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of

events, and each class member makes similar legal arguments to prove the defendant's

liability.")

### 4. Adequacy

"Rule 23(a)(4) requires that 'the representative party will fairly and adequately protect

the interests of the class.'" *In re MF Global*, 512 B.R. at 766 (quoting FED. R. CIV. P. 23(a)(4)).

"This requires two findings: 'First, class counsel must be qualified, experienced and generally

able to conduct the litigation.  Second, the class members must not have interests that are

antagonistic to one another.'" *Id.* (quoting *In re Drexel Burnham*, 960 F.2d at 291).  "'[A] class

representative must be part of the class and 'possess the same interest and suffer the same injury'

as the class members.'" *Amchem*, 521 U.S. at 625–26 (quoting *East Tex. Motor Freight System,*

*Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

### 5. Predominance under Rule 23(b)(3)

Additionally, the representative must meet one of the three criteria outlined in Rule 23(b).

FED. R. CIV. P. 23(b).  Rule 23(b)(3), which is implicated by the pleadings here, allows a class

action to proceed if:

> the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for fairly and efficiently adjudicating the controversy.  The
> matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

"Predominance is satisfied 'if resolution of some of the legal or factual questions that
qualify each class member's case as a genuine controversy can be achieved through generalized
proof, and if these particular issues are more substantial than the issues subject only to
individualized proof.'"  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting
*Catholic Healthcare W. v. U.S. Foodservice Inc. (In re U.S. Foodservice Inc. Pricing Litig.)*, 729
F.3d 108, 118 (2d Cir. 2013)).

### III.  SUMMARY OF THE PARTIES' ARGUMENTS

#### A.  *Musicland* Factors in Deciding Whether to Apply Rule 23

##### 1.  Lack of Prepetition Certification Arguments

Burgess argues that the Debtor's bad faith and disobedience of the District Court's
discovery orders in the *Burgess* Litigation is the sole reason plaintiffs did not seek class
certification pre-petition.  (Motion at 21.)  Burgess argues that the Debtor should not benefit
from strategic non-compliance with discovery requests and includes filing bankruptcy as part of
that strategic non-compliance.  (*Id.* at 22.)

The Debtor asserts that Burgess had ample time to seek class certification before the
Petition Date but chose not to.  (Objection at 18–19.)  The Debtor states that Burgess relies on
allegations in the Second Amended Complaint—filed nearly a year before the Petition Date—to
make her case for a class proof of claim.  (*Id.* at 19.)  The Debtor reasons that Burgess could
have made substantially the same application in the District Court.  (*Id.*)

In the Reply, Burgess realleges the Debtor's alleged strategic steps to avoid discovery
requests in order to stall the *Burgess* Litigation.  (Reply at 5.)  Burgess argues that condoning
this behavior would foreclose the reach of Rule 23 in all bankruptcy cases.  (*Id.* at 6.)

2.  <u>Notice to Putative Class Members Arguments</u>

Burgess states that service of the Bar Date via mail will result in putative class members not receiving actual notice of the Bar Date because they: (1) worked for the Debtor between eight years and sixteen months ago and may have moved; (2) may have been displaced by the COVID-19 pandemic; and (3) consist of many non-Americans who likely live abroad.  (Motion at 22–23.)  Burgess argues that email service would be more appropriate as email addresses tend to stay the same.  (*Id.* at 23.)  Burgess asserts that more than 20% and likely more than 50% of mailed notices will not reach putative class members in time to give actual notice of the Bar Date.  (*Id.*)

The Debtor asserts that Burgess' argument is gamesmanship because she did not object to the Debtor's bar date motion or to the proposed form of notice.  (Objection at 19.)  The Debtor states that Burgess' counsel appeared at the hearing on the Bar Date Order without raising an objection.  (*Id.*)  The Debtor asserts that Burgess' assumption that between 20% and 50% of putative class members will not receive actual notice of the Bar Date is unfounded.  (*Id.* at 20.)  The Debtor states that its Amended Schedules identify models for notice purposes as far back as 2012 and that notice of the Bar Date was served via email to approximately 530 models.  (Objection at 21–22.)

In the Reply, Burgess asserts that the Debtor did not provide information regarding the amount of: (1) undeliverable mailings; or (2) email bounce backs in response to its second notice.  (Reply at 7.)  Burgess states that the Debtor does not have email addresses for 270 putative class members who will likely not be notified via priority mail given their addresses are old.  (*Id.* at 7–8.)  Burgess concedes that notice here is sufficient for minimal due process with respect to putative class members whose identities are known.  (*Id.* at 8.)

As detailed earlier in this opinion, the Debtor has accounted for undeliverable mailings and which models could not be reached via email.  The Second D'Elia Spreadsheet indicates 40 models who could not be served via email or regular mail with 3 of those models having disputed claims and the remaining 37 models being served for "notice purposes only."  (Third D'Elia Declaration at 8.)

### 3.  Class Certification Affecting the Administration of the Estate Arguments

Burgess states that she obtained the Debtor's extensive accounting records and retained an expert accountant familiar with them.  (Dugger Decl. ¶ 11.)  Burgess contends that this familiarity with the records for a class proof of claim is more equitable because: (1) hundreds of claimants will need to file proofs of claim without assistance; (2) most creditors are unaware of how much they are owed; and (3) most creditors will be unaware of the process because they will not receive notice.  (Motion at 25.)

The Debtor contends that the factors Burgess lists do not create an evidentiary basis to establish that class certification will further administration of the Debtor's estate.  (Objection at 23.)  The Debtor argues that the claim objection process afforded by bankruptcy is superior to proceeding with a class action.  (*Id.* at 25.)  The Debtor notes that (i) completing a proof of claim is a simple process that can be done without counsel, (ii) the record is devoid of any evidence that the Debtor misrepresented non-payment, (iii) notice of the Bar Date in accordance with the Bar Date Order is sufficient and, (iv) there was no showing that models relocated to new addresses.  (*Id.* at 23.)  The Debtor also notes that models who received notice by mail contacted the Debtor, and the Debtor emailed the Bar Date Order to 530 models.  (*Id.*)

In the Reply, Burgess argues that a class proof of claim will not "gum up the works" via the following steps: (1) Burgess' submission of its expert's calculation of the total class-wide damages amount with the specific amounts owed to each class member—derived from the Open

Balance Report for all models; (2) the Debtor's response with a Quickbooks database export of the model transactions database reports showing any post-2019 payments to putative class members or amounts charged off the open balance calculations because they were never collected from the client; and (3) the subtraction of (2) from (1) to obtain the total amount due to the class.  (Reply at 9.)

        4.  <u>Deterrence Argument</u>

Burgess argues that deterrence should be considered as there is no reason for the Debtor to stop absconding with models' money.  (Motion at 27.)  Burgess contends there is little oversight to prevent the taking of funds.  (*Id.*)  Burgess contends that because the breach of fiduciary duty claims are "based on an allegation that [the Debtor] is improperly reporting, accounting for, and distributing" money received by it in trust pursuant to the power of attorney language in its contract, "[i]mposing the class claim device could dissuad[e] the reorganized companies from continuing with the same behavior."  (*Id.* at 27–28 (quoting *In re Chaparral Energy, Inc.*, No. BR 16-11144 (LSS), 2019 WL 4643849, at *9 (D. Del. Sept. 24, 2019).)

The Debtor contends that no evidence was presented to show the Debtor engaged in improper conduct from which it needs to be deterred.  (Objection at 25.)  The Debtor asserts that it is proceeding to restructure its business and eliminate past liabilities.  (*Id.*)

In the Reply, Burgess argues that deterrence is needed because the bankruptcy filing, and the amount owed to models is evidence of wrongdoing.  (Reply at 9.)  Burgess asserts that the failure to pay 275 models is evidence of delayed payments and misrepresentation.  (*Id.* at 10.)

## B. Rule 23 Arguments

### 1. Numerosity Argument

Burgess calculates that: (1) at least 300 models have breach of fiduciary duty claims for failure to pay; and (2) at least 300 have breach of fiduciary duty claims for delayed payments. (Dugger Decl. ¶ 13.)  The Debtor concedes that numerosity is satisfied.  (Objection at 26.)

### 2. Commonality Argument

Burgess argues that common questions of law or fact include: (1) whether the Debtor had a fiduciary duty arising from its power of attorney language in its form contracts; (2) whether its withholding of models' funds beyond a reasonable period of time violated this fiduciary duty; (3) whether its delay in paying models beyond a reasonable period of time violated this fiduciary duty; (4) whether the Debtor's use of models' funds violated this fiduciary duty; (5) whether the class is entitled to relief of: (i) a constructive trust; (ii) disgorgement; (iii) compensatory damages; and/or (iv) punitive damages; and (6) the amount of pre-judgment interest owed from damages.  (Motion at 28–29.)

The Debtor argues that commonality is not satisfied but addresses its arguments via Rule 23(b)(3) predominance of the issues.  (Objection at 26, 29–33.)  "Rule 23(a)(2)'s commonality requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 609 (1997) (internal quotations removed).  The Debtor asserts that Burgess cannot satisfy her "burden of establishing commonality because each putative class member's right to recovery is dependent on facts specific to that individual."  (Objection at 30–31 (quoting *In re Bally Total Fitness*, 402 B.R. at 622).)

In the Reply, Burgess ignores the Debtor's contentions regarding commonality. Instead, Burgess asserts that the Debtor concedes commonality as all putative class members had the same power of attorney language in each of the Debtor's form contract used. (Reply at 10.)

### 3.  Typicality Argument

Burgess asserts that her breach of fiduciary duty claims is based on the same power of attorney language as putative class members and spans two theories of liability: (1) failure to pay and (2) delayed payment. (Motion at 30.)

The Debtor notes that Burgess' situation is different from many other alleged putative class members. (Objection at 27.) The Debtor relies on Burgess' failure to provide written notice of termination and her breach of contract when she signed with a competing agency while still under the Debtor's contract. (*Id.* at 28.) The Debtor asserts that, given her breach, it does not need to pay Burgess, making her claim atypical to class members. (*Id.*) The Debtor asserts that its defenses may render Burgess unable to establish the elements of the class's claim. (*Id.*)

In the Reply, Burgess asserts that she provided written notice of termination and that the Debtor knew Burgess was released from the agency by Katia Sherman (the Debtor's previous president). (Reply at 11 (citing Supp. Dugger Decl. ¶ 5; Burgess Contract Email).) Burgess states the Debtor falsely asserted that in other litigation that a model it knew had been released was still under contract. (Reply at 11 citing (Model Affidavits at 13–16).) The Burgess Contract Email states: "I think Katia must have released [Burgess] . . . ." (Burgess Contract Email.) At the hearing, Burgess' counsel argued that she was released because the Debtor "cooperated in sending her information to a different agency" when she wanted out of her contract but the Debtor is changing the story "only now when they were sued . . . ." (Transcript at 33:7–9; 17–18.)

4.  Adequacy of Representation

Burgess asserts she is putting the class's interest before her own because she may receive a reduced amount of payment.  (Motion at 30.)  Dugger states he is adequate to represent the class given his work in class discrimination cases.  (Dugger Decl. ¶¶ 14–17.)

The Debtor argues that Burgess is not an adequate representative because she has an interest antagonistic to other putative class members.  (Objection at 28–29.)  The Debtor contends Burgess is not entitled to collect money from the Debtor because she failed to provide the required termination notice to the Debtor.  (*Id.* at 29.)  The Debtor notes cases providing its defense has merit under New York law.  (*Id.* (citing *Mark IV Industries, Inc. v. Kerns*, 2013 WL 12310665 at *8 (W.D.N.Y. July 18, 2013) (quoting *Bausch & Lomb, Inv. v. Bressler*, 977 F.2d 720, 727 (2d Cir. 1992)) ("'Under New York law, . . . [w]here the contract specifies conditions precedent to the right of cancellation, the conditions must be complied with.'"); *see also Filmline (Cross–Country) Prods., Inc. v. Nuclear Fuel Servs., Inc.*, 865 F.2d 513, 518–19 (2d Cir. 1989) (affirming finding of breach upon failure to terminate contract in accordance with notice provision)).)  The Debtor argues that Burgess' failure to provide notice of her termination and the fact that she was represented by three other modeling agencies in the United States when the Debtor represented her may affect decisions she makes in this litigation.  (Objection at 29.)

The Burgess Contract included the following exclusivity provision:

> I hereby engage Major Model Management Inc. ("You" or "Manager") as my **sole and exclusive personal manager in New York** for the term of this Agreement (the "Term") in connection with the development of my career in the modeling , advertising, licensing, entertainment , musical , theatrical , dramatic , artistic, fashion, film, video, television and other visual media industries , and all services to be rendered or performed by me in connection therewith ( all my work in such industries being referred to herein as "Services").

(Burgess Contract at 2 (emphasis added).)[5]

In the Reply, Burgess notes that the Debtor's defense—that it is not required to pay models who breached contract after not being paid—is not a defense because the class claims are for a breach of a fiduciary duty separate from the contract.  (Reply at 11.)  Burgess argues that, even if the claims were for breach of contract, (i) the Debtor's position would not be a basis to withhold funds; (ii) all class members would have the common defense of the Debtor's prior breach of not paying; and (iii) all members have the common statutory defense under New York law because the Debtor operates as an unlicensed employment agency.  (Reply at 11.)

     5.   Predominance Argument

Burgess argues that predominance is satisfied for the same reasons as commonality.  (Motion at 31.)  Burgess asserts that class damages—both class-wide damages and individualized damages—can be calculated from the Debtor's accounting information.  (*Id.*)

The Burgess Contract contained the following terms regarding payment to Burgess:

> MAJOR is not obligated to provide payment on any Service rendered by me until payment for said Service has been received from Client.  I also understand that in order to receive payment, I must call the Accounting Department in advance to place a request for payment.

(Burgess Contract at 5.)

The Women Form Modeling Contract and the Unisex Form Modeling Contract contained a similar provision regarding how models are paid.  (*See* Women Form Modeling Contract at 5; Unisex Form Modeling Contract at 7.)  The Burgess Contract also provided procedures for advances of up to 25% for a job given that "most clients pay between 60 and 180 days from the

---

[5]     The Unisex Form Modeling Contract and the Women Form Modeling Contract both contain a near identical exclusivity provision.  (Unisex Form Modeling Contract at 5; Women Form Modeling Contract at 3.)

date they receive billing, and foreign clients often take longer." (Burgess Contract at 14.)
Burgess' Contract also provided a provision that enabled the Debtor, at its discretion, to make a
personal loan to her. (*Id.* at 6–7.) The Women Form Modeling Contract and the Unisex Form
Modeling Contract did not contain a similar provision.

The Debtor argues that the Court would need to analyze factual questions for each model,
including: (1) does each model's contract contain the exact "power of attorney" language
identified by Burgess; (2) did the Debtor actually withhold any money; (3) did the Debtor have a
basis to withhold the funds (4) how long did the Debtor hold the funds after receipt from its
customer before remitting funds to the model; and (5) did the Debtor fail to maintain accurate
records of each model's earnings. (Objection at 31.) The Debtor contends that Burgess cannot
show that the class action is superior to the claim objection process. (*Id.*) Additionally, the
Debtor distinguishes Burgess' case from *MF Global*, 512 B.R. at 768, because in that case there
was no issue whether common class issues predominated as the Trustee had conceded liability,
meaning the only step remaining was to calculate individual damages. (*Id.* at 33.) The Debtor
contends that Burgess' counsel does not plan to forego compensation and will be an additional
cost to the estate. (Objection at 33.)

In the Reply, Burgess asserts that the Debtor is wrong to state that class claims will turn
into "mini-trials." (Reply at 11.) Burgess asserts that these are class-wide issues, or not
contested issues, due to (1) deposition testimony and the Dolci Declaration establishing three
versions of the form modeling contracts which all contain the same power of attorney language
(Supp. Dugger Decl. ¶¶ 2–4 Ex. B–D); (2) whether money was withheld is already established
by the use of database evidence (Open Balance Report); (3) it is a breach of a fiduciary duty for
the Debtor to have failed to pay class members since December 31, 2019 (Reply at 12); (4) the

Debtor can establish addressing returned payments through its class-wide accounting database records (*id.*); and (5) the accuracy of the Debtor's class-wide database productions is a common issue (*id.*).

## IV.  DISCUSSION

### A.  The Court Will Not Exercise Its Discretion to Apply Rule 23

Burgess did not satisfy her burden for the Court to exercise its discretion to permit a class proof of claim because (i) the class was not certified pre-petition despite ample opportunity to do so, (ii) there is sufficient notice that complies with the Bankruptcy Code to potential class members per the Bar Date Order, (iii) class certification would adversely affect the administration of the estate, and (iv) there is no need to certify the class for the purposes of deterring the Debtor from engaging in withholding funds to models.  The Court believes the claims allowance process provides an efficient mechanism for resolving any legally or factually disputed claims in this case.

The *Musicland* factors inform a court's decision whether to exercise discretion to extend the application of Rule 23 for a class proof of claim.  *In re Musicland*, 362 B.R. at 654–55.  "A court sitting in bankruptcy may decline to apply Rule 23 if doing so would . . . 'gum up the works' of distributing the estate."  *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 (quotations omitted).  In looking at the *Musicland* Factors, the Court finds that each factor weighs against exercising discretion to permit a class proof of claim.

### 1.  Lack of Pre-Petition Class Certification Weighs Against Exercising Discretion to Apply Rule 23

The first *Musicland* Factor—whether there was a certified class prepetition—weighs against the Court exercising discretion.  *In re Musicland*, 362 B.R. at 654–55.  In *In re Bally Total Fitness*, 402 B.R. at 620, this Court noted that "a class proof of claim is consistent with the

Bankruptcy Code generally . . . where a class has been certified prepetition by a non-bankruptcy

court . . . ."  The class here was not certified prepetition by a non-bankruptcy court.  (Objection

at 18–19.)  Instead, Burgess relitigates her assertions that discovery has not been completed and

is the sole cause for the *Burgess* Litigation stalling.[6]  (Motion at 21–22.)  Even in the Reply,

Burgess does not satisfactorily answer why she did not make an application for class certification

in the District Court more than a year ago.  (Reply at 5–6.)  Given that the arguments for class

certification appear to be substantially similar arguments to those made in the Second Amended

Complaint, the Debtor is correct that there is no discernible reason why Burgess could not have

made this application before the District Court prior to the Petition Date.  (Objection at 19.)

Therefore, the lack of prepetition class certification **WEIGHS AGAINST** the Court exercising

discretion.

2.  <u>Notice to Class Members is Sufficient and Weighs Against Exercising Discretion
to Apply Rule 23.</u>

The second *Musicland* Factor—whether class members received notice of the bar date—

weighs against exercising the Court's discretion.  *In re Musicland*, 362 B.R. at 654–55.

Although first class mailing may not be perfect, "the issue is not whether notice to class

members was unreasonable but whether any notice issues are sufficient to require that the class

motion be granted."  *In re Northwest Airlines Corp.*, 2007 WL 2815917 at *4 (Bankr. S.D.N.Y.

September 26, 2007) (citing *In re Jamesway Corp.*, 1997 WL 327105 at *8 (Bankr. S.D.N.Y.

June 12, 1997) ("The proper inquiry is whether [the debtor] acted reasonably in selecting means

likely to inform persons affected by the Bar Date and these chapter 11 proceedings, not whether

each claimant actually received notice.")).  Even if "perfect" service is not achieved, courts in

---

[6]    It should be noted that Burgess made similar arguments in her Lift Stay Motion.  This Court considered
those arguments and denied them without prejudice.  (*See* ECF Doc. # 69.)

this district have found service to be sufficient for the purposes of denying class certification.

*See In re Musicland*, 362 B.R. at 656 (finding that, even though the debtor had neglected to mail

notice of the bar date to the putative class's counsel, and there was no evidence the debtor

published notice of the bar date despite being ordered to do so, such omissions were "harmless"

since the debtor sent actual notice of the bar date to putative class members).

If Burgess' counsel believed that the proposed notice procedure was inadequate, he

should have raised the propriety of the Bar Date Order earlier in the case. (Objection at 19.)

Burgess contends, without evidentiary support, that 20% to 50% of the alleged class members

may not receive actual notice because they moved. (Motion at 22–23; *see also* Objection at 20.)

It is true that some putative class members may not receive actual notice of the Bar Date and

first-class mail may not always be perfect. However, the "proper inquiry is whether [the debtor]

acted reasonably in selecting means likely to inform persons affected by the Bar Date and . . . not

whether each claimant actually received notice." *In re Jamesway Corp.*, 1997 WL 327105 at *8.

Here, the Debtor acted appropriately to inform models who could be affected by the Bar Date

Order and even exceeded the requirements of the Bar Date Order by emailing 530 models in

addition to using regular mail. (Objection at 23.) The Second D'Elia Spreadsheet, attached to

the Third D'Elia Declaration, indicates that the Debtor lacks emails and current mailing

addresses for three models scheduled with disputed claims totaling to $14,600.[7] (Third D'Elia

Decl. at 8.) Therefore, the Bar Date Order's notice procedures are sufficient and **WEIGH**

**AGAINST** the Court exercising discretion.

---

[7]    Notably, the other 37 models listed on the Second D'Elia Spreadsheet are models the Debtor does not have
current mailing addresses or email address for and were scheduled for "notice purposes only." (Third D'Elia Decl.
at 8.) Granted, these 37 models may disagree, and could assert that they have a claim.

### 3. Class Certification Would Adversely Affect the Administration of the Estate

The final *Musicland* Factor—whether the administration of the estate will be adversely affected—weighs against exercising discretion. *In re Musicland*, 362 B.R. at 654–55. "[A] bankruptcy case can proceed no faster than its slowest matter . . . and a class action may 'gum up the works' because until complete, the bankruptcy court cannot determine the entitlement of other creditors." *In re Woodward & Lothrop Holdings*, 205 B.R. at 376. Here, certifying a class proof of claim will require the Court to determine the appropriate amount for the class claim and it will not be as easy as using an expert accountant as Burgess describes. (Dugger Decl. ¶ 11.) At the hearing on the Motion, the Court noted that certifying a class proof of claim "leaves giant questions where there could well be unique facts and circumstances behind any non-payment to specific models. And many of those [disputes] would get sorted out consensually between the debtor and the claimant [in the claims allowance process] and would require absolutely no contested hearing in the bankruptcy court." (Transcript at 23:14–19.) The Court further noted that in the claims allowance process "resolving [a] common legal issue would very well lead to a resolution of the other contested claims without having to go through the class certification . . . ." (*Id.* at 24:10–12.) Certifying a class will take more time, effort, and energy away from the administration of the estate than handling individual proofs of claims through the claim objection process. *See In re Bally Total Fitness*, 402 B.R. at 621 (finding that "class certification would adversely affect the administration of these cases adding layers of procedural and factual complexity that accompany class-based claims, siphoning the Debtors' resources and interfering with the orderly progression of the reorganization" and also noting that "class status is unnecessary to protect the rights of the various members of the putative class" because "their rights are amply protected by the chapter 11 claims process itself").

This is a small business chapter 11 case, filed under Subchapter V, with an independent

Subchapter V trustee appointed to provide oversight and guidance to the Court and the parties.[8]

At the hearing on the Motion, the Court asked the experienced Subchapter V trustee, Heidi

Sorvino, Esq., whether she believed that claims of the models in this case could effectively be

adjudicated in the claims allowance process, or whether a class proof of claim should be

permitted.  The Subchapter V trustee responded:

> I do believe . . . that the claims, the bankruptcy process and the
> objection process does allow for a very efficient process and I do
> believe that can be done here.  You're not dealing with models with
> millions of dollars of claims . . . [b]ut with the claims objection
> process . . . and the way that the Bankruptcy Code has set it up, I do
> believe it is the most efficient way to deal with the claims in this
> matter.  And, you know, based on the plan that has been filed, there
> is a possibility here that the models will be paid close to 100 cents
> on the dollar, so I don't see the need for a class proof of claim and
> that the efficient way to deal with the models' claims is the claims
> objection process set forth in the Bankruptcy Code.

(Transcript at 52:13–53:3.)

The Court finds the Subchapter V trustee's observations to be persuasive.  The Court

believes that the claims allowance process is the most efficient, cost-effective mechanism to

address any disputed claims in this case.  Certifying a class claim would adversely affect the

administration of this Debtor's bankruptcy case and **WEIGHS AGAINST** the Court exercising

discretion.

---

[8]      Judge Paul A. Bonapfel, a respected bankruptcy judge in the Northern District of Georgia, has provided an excellent analysis of Subchapter V and the role of the Subchapter V trustee, where he explained that "[i]n general, the role of the trustee is to supervise and monitor the case and to participate in the development and confirmation of a plan."  Hon. Paul A. Bonapfel, A GUIDE TO THE SMALL BUSINESS REORGANIZATION ACT OF 2019 (Revised July 2021), at 44 & n.82.  Judge Bonapfel also points to THE SUBCHAPTER V TRUSTEE HANDBOOK, prepared by the Executive Office of the United States Trustee.  The Handbook provides that "The subchapter V trustee is an independent third party and a fiduciary who must be fair and impartial to all parties in the case."  *See* U.S. DEP'T OF JUSTICE, HANDBOOK FOR SMALL BUSINESS CHAPTER 11 SUBCHAPTER V TRUSTEES (Feb. 2020), https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-11-subchapter-v-handbooks-reference-materials, at 2-2.

4.  <u>Class Certification is Not Warranted for the Purpose of Deterrence</u>

The Debtor is correct that nothing has been brought forth to indicate the Debtor filed

bankruptcy in bad faith or as a litigation tactic to stall discovery.  (Objection at 25.)  Thus far,

only Burgess has made protestations in her Lift Stay Motion and this Motion that this bankruptcy

was a means to stall litigation.  There has been no motion seeking to dismiss this case citing bad

faith as a basis.  Additionally, Burgess ignores the appointment of the Subchapter V trustee who

has a fiduciary duty to ensure compliance with the Bankruptcy Code.  *See* 11 U.S.C. § 1183

(describing the duties of the Subchapter V trustee).  Therefore, it is **NOT NECESSARY** to deter

the Debtor via certifying a class proof of claim.

**B.  Even If the Court Exercised its Discretion, Burgess Does Not Satisfy the Requirements of Rule 23**

Rule 23 requires four prerequisites for a class action to proceed: "(1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class."  FED. R. CIV. P. 23(a).  Here, Burgess **SATISFIES** element 1

(numerosity), but **DOES NOT SATISFY** elements 2 (commonality), 3 (typicality) and 4

(adequacy of representation).

1.  <u>Rule 23(a)(1): Numerosity Is Satisfied</u>

Given that members for each putative class exceeds 40 members, Burgess clearly

**SATISFIED** Rule 23(a)(1)'s numerosity requirement.  *In re MF Glob.*, 512 B.R. at 765 n.6.

2.  <u>Rule 23(a)(2): Commonality Is Not Satisfied</u>

Burgess argues that each model's contract contained the same power of attorney language

and would implicate common questions of fact and law.  (Reply at 10.)  However, the Debtor

articulated multiple scenarios and reasons why certain models were not timely paid.  (Supp.

Dolci Decl. ¶ 7.)  This negates Burgess' contention that common issues of law and fact are

implicated and indicates that each putative class member needs to be evaluated individually.  *See*

*Wal–Mart Stores, Inc.*, 544 U.S. at 349–50 ("Commonality requires the plaintiff to demonstrate

that the class members have suffered the same injury.")  Therefore, Burgess **DOES NOT**

**SATISFY** Rule 23(a)(2)'s commonality requirement.

### 3. Rule 23(a)(3): Typicality Is Not Satisfied

The Debtor's assertion that Burgess was the breaching party is muddied by the Burgess

Contract Email, which raises the possibility the Debtor released Burgess from her contract.  (*See*

Burgess Contract Email.)  However, it is unclear whether other models in the putative class were

represented by other modeling agencies while they were represented by the Debtor.  Burgess'

Contract specifically contains an exclusivity provision (*see* Burgess' Contract at 3), as does the

Unisex Form Modeling Contract (*see* Unisex Form Modeling Contract at 5) and the Women

Form Modeling Contract (*see* Women Form Modeling Contract at 3).  Burgess was represented

by at least three modeling agencies when the Debtor represented her.  (Objection at 28.)  That

alone renders her claims atypical of putative class members because it is unclear if putative class

members were also represented by multiple agencies when the Debtor represented them.  *See*

*Connaught*, at 491 B.R. at 94 ("Typicality . . . requires that the claims of the class representatives

be typical of those of the class, and 'is satisfied when each class member's claim arises from the

same course of events, and each class member makes similar legal arguments to prove the

defendant's liability'") (quotations omitted).  Therefore, Burgess **DOES NOT SATISFY** Rule

23(a)(3)'s typicality requirement.

4.  <u>Rule 23(a)(4): Adequacy of Representation Is Not Satisfied</u>

Under Rule 23(a)(4), the Court finds that Burgess' counsel, Mr. Dugger, is qualified, experienced, and able to conduct further litigation in this matter.  (Dugger Decl. ¶¶ 14–17.) However, Burgess appears to have interests antagonistic to other putative class members.  "'[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'"  *Amchem*, 521 U.S. at 625–26 (quotations omitted).  Here, it does not appear that Burgess suffers from the same interest, or the same injury.  The Debtor may be able to argue that Burgess is an inadequate representative because she breached her contract first. (Objection at 29.)  Although that argument is less clear given that Burgess has provided some evidentiary support to show that she was released from her contract via the Debtor's previous president.  (Burgess Contract Email.)  That said, the Debtor will be able to argue that she worked for three modeling agencies while the Debtor represented her, possibly in violation of the exclusivity provision naming the Debtor as her "sole and exclusive personal manager in New York."  (Objection at 29; Burgess Contract at 2.)  The Debtor asserts that Burgess was represented by three other modeling agencies in the United States.  (Objection at 29.)  There is a possibility that Burgess was represented by modeling agencies located outside of New York. Neither the Debtor, or Burgess herself, named the other modeling agencies in their pleadings. Nevertheless, it is unclear whether other class members worked for other modeling agencies while represented by the Debtor; or what percentage of models engaged in such activity.  These facts surrounding Burgess's claim preclude her from adequately representing the proposed class. Therefore, Burgess **DOES NOT SATISFY** Rule 23(a)(4)'s adequacy of representation requirement.

5.   Rule 23(b): Predominance is Not Satisfied

The Debtor is correct that each model's claim in the putative class will require a mini

analysis before permitting each alleged class member into the class proof of claim.  (Objection at

31.)  There are likely unique circumstances behind why each model who could potentially be a

member of the proposed class was initially denied payment or why payment was delayed.  (*See*

Supp. Dolci Decl. ¶ 7 (articulating why funds were withheld for certain models).)  Each putative

class member may not necessarily have the same issue or facts predominating over their

individual claim.  *See T.L. Cannon Corp.*, 778 F.3d at 405 (quotation marks omitted)

("Predominance is satisfied if resolution of some of the legal or factual questions that qualify

each class member's case as a genuine controversy can be achieved through generalized proof,

and if these particular issues are more substantial than the issues subject only to individualized

proof.")  To the extent that common factual or legal issues exist, the claims allowance process

can be tailored to deal efficiently with those common issues in resolving disputed claims.

Therefore, the legal and factual issues presented **DO NOT PREDOMINATE** over the

claims of the putative class members.

## V.    <u>CONCLUSION</u>

For the reasons explained above, the Court **DENIES** the Motion to permit Burgess to file

a class proof of claim.  Any disputed claims will have to be resolved in the claims allowance

process.

**IT IS SO ORDERED.**


Dated:    June 21, 2022
          New York, New York


                              _Martin Glenn_
                              MARTIN GLENN
                              Chief United States Bankruptcy Judge