Melissa A. Peña, Esq.
**NORRIS McLAUGHLIN, P.A.**
7 Times Square, 21st Floor
New York, New York 10036
Phone:  212-808-0700
Fax:  212-808-0844
mapena@norris-law.com
*Counsel for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

| | |
|---|---|
| In re: | Chapter 11 |
| MAJOR MODEL MANAGEMENT INC., | Subchapter V |
| Debtor. | Case No.  22-10169 (MG) |

---------------------------------------------------------------- X

**SMALL BUSINESS DEBTOR'S FIRST AMENDED AND RESTATED PLAN OF REORGANIZATION UNDER**
**SUBCHAPTER V OF CHAPTER 11 OF THE BANKRUPTCY CODE**

This Plan of Reorganization is presented to you to inform you of the proposed plan for restructuring the debts of Major Model Management, Inc., Debtor and Debtor-in-Possession (the "Debtor") and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN.  IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____.  THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: MELISSA A. PENA, ESQ., NORRIS McLAUGHLIN, P.A., 7 TIMES SQUARE, 21st FLOOR, NEW YORK, NEW YORK, 10036.**

**A HEARING TO CONSIDER CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ IN COURTROOM NO. 523 AT THE UNITED STATES COURTHOUSE FOR THE SOUTHERN DISTRICT OF NEW YORK, 1 BOWLING GREEN, NEW YORK, NEW YORK, 10004.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

|  |  |
|---|---|
|  | NORRIS McLAUGHLIN, P.A.<br>Attorneys for the Debtor |
|  | By: */s/ Melissa A. Peña* |
| Dated: March 20, 2023 | Melissa A. Peña |

# TABLE OF CONTENTS

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ................................. 1

**ARTICLE 1** HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR .................. 2
    **1.1**    Nature of the Debtor's Business. ............................................................................. 2
    **1.2**    History of Business Operations of the Debtor. ...................................................... 2
    **1.3**    Filing of the Debtor's Chapter 11 Case. ................................................................. 2
    **1.4**    Legal Structure and Ownership. ............................................................................. 2
    **1.5**    Debtor's Assets. ....................................................................................................... 2
    **1.6**    Debtor's Liabilities. ................................................................................................. 2
    **1.7**    Current and Historical Financial Conditions. ......................................................... 3
    **1.8**    Events Leading to the Filing of the Bankruptcy Case. .......................................... 3
    **1.9**    Significant Events During the Bankruptcy Case. ................................................... 3

**ARTICLE 2** THE PLAN ............................................................................................................. 4
    **2.1**    Unclassified Claims. ............................................................................................... 4
    **2.2**    Classes of Claims and Equity Interests. ................................................................. 5
    **2.3**    Treatment of Executory Contracts and Unexpired Leases. ................................... 6
    **2.4**    Means for Implementation of the Plan. .................................................................. 7
    **2.5**    Payments. ................................................................................................................. 7
    **2.6**    Tax Consequences of the Plan. ............................................................................... 8

**ARTICLE 3** FEASIBILITY OF PLAN ..................................................................................... 8
    **3.1**    Ability to Initially Fund Plan. ................................................................................. 8

**ARTICLE 4** LIQUIDATION ANALYSIS. ............................................................................... 9

**ARTICLE 5** DISCHARGE ......................................................................................................... 9
    **5.1**    Discharge. ................................................................................................................ 9
    **5.2**    Third Party Release
    **5.2**    Title to Assets. ........................................................................................................ 9
    **5.3**    Binding Effect. ........................................................................................................ 9
    **5.4**    Severability. ............................................................................................................ 9
    **5.5**    Retention of Jurisdiction by the Bankruptcy Court. ............................................ 10
    **5.6**    Captions. ................................................................................................................ 10
    **5.7**    Modification of Plan. ............................................................................................ 10
    **5.8**    Final Decree. ......................................................................................................... 10

**ARTICLE 6** FREQUENTLY ASKED QUESTIONS ............................................................ 10

**ARTICLE 7** DEFINITIONS ..................................................................................................... 12
    **7.1**    The definitions and rules ...................................................................................... 12
    **7.2**    Administrative Claimant: ..................................................................................... 12
    **7.3**    Administrative Expense: ...................................................................................... 12
    **7.4**    Allowed Claim: ..................................................................................................... 12
    **7.5**    Allowed General Unsecured Claim: .................................................................... 12
    **7.6**    Bankruptcy Code or Code: ................................................................................... 12

| | | |
|---|---|---|
| **7.7** | Bankruptcy Court: | 12 |
| **7.8** | Cash: | 12 |
| **7.9** | Chapter 11 Case: | 12 |
| **7.10** | Claim: | 13 |
| **7.11** | Class: | 13 |
| **7.12** | Confirmation Date: | 13 |
| **7.13** | Confirmation Hearing: | 13 |
| **7.14** | Confirmation Order: | 13 |
| **7.15** | Creditor: | 13 |
| **7.16** | Debtor and Debtor-in-Possession: | 13 |
| **7.17** | Disputed Claim: | 13 |
| **7.18** | Distributions: | 13 |
| **7.19** | Effective Date: | 13 |
| **7.20** | Equity Interest: | 13 |
| **7.21** | Executory Contracts: | 13 |
| **7.22** | Final Order: | 13 |
| **7.23** | Petition Date: | 14 |
| **7.24** | Plan: | 14 |
| **7.25** | Reorganized Debtor: | 14 |
| **7.26** | Schedules: | 14 |
| **7.27** | Trustee: | 14 |
| **7.28** | Unsecured Creditor: | 14 |

# SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan proposes to pay all Administrative Expenses and Priority Claims, if any, from funds on hand as of the Effective Date. Allowed Unsecured Claims will be paid from available cash flow generated by the Debtor's operations over a period of three years from the Effective Date. The following Classes of Creditors are impaired under the Plan and, thus, entitled to vote to accept or reject the Plan:

> Class 1: All Allowed General Unsecured Claims.

> Class 2: The 386 models, identified on Exhibit A, who are alleged to be members of a putative class action instituted against the Debtor by Stephanie Hoffmann ("Hoffmann") in the United States District Court for the Southern District of New York, who allegess that such creditors sustained damages as a result of a data breach by the Debtor.

Based upon the Debtor's Schedules, Claims against the Debtor total $11,421,855. A substantial portion of the Claims are disputed by the Debtor. The amount of Class 2 Claims, which are all disputed, has never been adjudicated.

The Debtor believes that once all Claim disputes have been resolved, the total Unsecured Creditor body will total approximately $500,000. As Class 2 Claims will be paid by a third party, Mount Vernon Insurance Company ("Mt. Vernon"), the Debtor's insurance company, the amounts necessary to satisfy the Class 2 Claims are not included in this amount. Assuming that the Debtor's projections are correct, Creditors shall receive payment of 100% of their Allowed Claims.

Distributions to Class 1 Creditors shall commence one year after the Effective Date of the Plan. The amount of the annual distributions will be dependent on the Debtor's income less expenses each year. While the Debtor anticipates a 100% distribution on their Allowed Claims, in the event available funds are less than projected, or total Claims are greater than projected, said Creditors shall receive a *pro rata* distribution of available funds. Class 2 Creditors shall receive the payment proposed under the Plan in full satisfaction of their Claims upon compliance with certain requirements set forth hereinafter.

# ARTICLE 1
# HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1 Nature of the Debtor's Business.

The Debtor is a commercial modeling agency which provides modeling services primarily to the retail trade. It represents both male and female models, working regularly with such iconic brands as Ralph Lauren, Gucci, Prada, Givenchy and Armani.

### 1.2 History of Business Operations of the Debtor.

In 1999, Guido Dolci formed the Debtor to service the New York market. The booking teams of the Debtor are comprised of top industry professionals, who have expanded the Debtor's business into multimedia, television, and film. The Debtor currently maintains leased locations for the operation of its business at the following addresses: 344 W. 38th Street, Suite 602, New York, New York and 888 Newark Avenue, Suite 525, Jersey City, New Jersey. It also leases an apartment at 7000 Kennedy Blvd, Guttenberg, New Jersey, where certain of its models reside on a temporary basis.

### 1.3 Filing of the Debtor's Chapter 11 Case.

On February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to subchapter V of chapter 11 of the Bankruptcy Code. The Debtor's case remains pending before the Bankruptcy Court.

### 1.4 Legal Structure and Ownership.

The Debtor is a corporation, organized and existing under the laws of the State of New York. The equity interest in the Debtor is wholly owned by Gemide SLR, a company organized and existing under the laws of Italy. The Debtor's sole officer is Guido Dulci, who has a 90% Equity Interest in the Debtor's parent and serves as the Debtor's President. The remaining Equity Interest in the Debtor's parent is owned by Mr. Dolci's son. Nadia Shahrik, an employee of the Debtor, serves as the Debtor's Vice-President.

### 1.5 Debtor's Assets.

The Debtor's principal assets consist of approximately $170,000 in cash on deposit, $400,000 in accounts receivable, and a loan outstanding in the approximate amount of $163,000. Other assets are comprised of furniture, fixtures and equipment, leasehold deposits, taxes receivable and advances to models, which total approximately $50,000.

### 1.6 Debtor's Liabilities.

The Debtor has no known secured or priority debt. General Unsecured Claims against the Debtor, per the Debtor's Schedules, total $11,421,855. A significant portion of this liability is comprised of Claims against the Debtor which have been asserted in an action captioned *Burgess v. Major Model Management, Inc. et. al*, Case No. 1:20-CIV-2816, filed in the United States District Court for the Southern District of New York (the "Federal Court Action"), which

seeks damages for unpaid wages, late paid wages, improper wage deductions and other compensatory and punitive damages under the Fair Labor Standards Act of 1938 ("FLSA"), 28 U.S.C. §§ 201, *et seq.* and the New York Labor Law, Article 6, §§ 190 *et seq.* The crux of the Claim is that the Debtor improperly classified the models as independent contractors, rather than employees. The Debtor disputes the Claims set forth in the Federal Court Action in their entirety.

Another significant portion of the Debtor's liability is a $5 million claim by Hoffmann, which she has asserted in an action entitled *Hoffmann v. Major Model Management, Inc.,* Civil Action No. 1:20-CV-6941, filed in the United States District Court for the Southern District of New York (the "Data Breach Action"), seeking damages on behalf of herself and a putative class arising from a data breach. The Debtor disputes the purported damages claimed in the Data Breach Action.

### 1.7 Current and Historical Financial Conditions.

Attached hereto as Exhibit "B" are the Debtor's profit & loss statements and balance sheets for 2020 and 2021. Attached hereto as Exhibit "C" is the Debtor's profit & loss statement for the period January through December of 2022. The later statement contains substantial professional expenses most of which resulted from legal fees incurred in the Federal Court Action. The elimination of these expenses will reflect that the Debtor's operations are profitable.

### 1.8 Events Leading to the Filing of the Bankruptcy Case.

The Debtor's chapter 11 filing was precipitated by the filing of the Federal Court Action, which was the last in a series of litigations commenced by former models of the Debtor for unpaid wages. Jasmine Burgess ("Burgess"), the plaintiff in the Federal Court Action, is seeking class certification in the action. The Debtor lacks sufficient monies to defend against the claims asserted in the Federal Court Action, which would require engaging in substantial e-discovery, motion practice and potentially funding the expense of a trial. As a result, the Debtor was required to avail itself of the protections afforded by the Bankruptcy Code.

### 1.9 Significant Events During the Bankruptcy Case.

On the Petition Date, the Debtor filed a motion to continue its pre-existing cash management system and for related relief (the "Cash Management Motion") and a motion to assume its executory contracts with models (the "Motion to Assume") to enable the Debtor to pay them pre-Petition sums owed and thereby maintain the stability of its business. Hearings thereon were conducted on February 17, 2022. The Cash Management Motion was granted while the Motion to Assume was denied without prejudice. On March 3, 2022, the Debtor refiled the Motion to Assume with stipulations confirming that the counterparties to the executory contracts consented to the relief requested therein. The Court granted the Motion to Assume on March 9, 2022.

On February 14, 2022, Heidi J. Sorvino (the "Trustee") was appointed as subchapter V Trustee in the Debtor's case and remains acting in that capacity.

On March 29, 2022, the Debtor filed a motion to set a bar date for filing proofs of claims. The Court scheduled June 6, 2022 as the bar date in this matter.

On March 16, 2022, Burgess filed a motion seeking relief from the automatic stay to proceed with the Federal Court Action to enter a judgment against the Debtor (the "Stay Relief Motion"). On April 18, 2022, the Debtor objected to the Stay Relief Motion taking the position that Burgess' claim should be adjudicated as part of the claims objection process before the Bankruptcy Court. A hearing on the Stay Relief Motion was conducted on April 18, 2022 and the Court denied such motion without prejudice.

On April 21, 2022, Burgess filed a motion seeking approval to proceed with a class proof of claim solely with respect to the breach of fiduciary duty claims she has asserted in the Federal Court Action (the "Class Proof of Claim Motion"). On May 5, 2022, the Debtor opposed the Class Proof of Claim Motion. A hearing on the Class Proof Claim Motion was conducted on May 12, 2022. On June 21, 2022, the Bankruptcy Court entered an Order denying the Class Proof of Claim Motion.

On June 14, 2022, Hoffmann, on behalf of herself and the putative class in the Data Breach Action, filed a motion seeking relief from the automatic stay to proceed with the Data Breach Action to the extent that there is insurance coverage available to cover the claims being asserted in the action (the "Hoffmann Stay Relief Motion"). On July 19, 2022, Mt. Vernon filed an opposition to the Hoffmann Stay Relief Motion for, among other reasons, Hoffmann did not follow the proper procedure to certify a class (the "Mt. Vernon Opposition"). The Debtor joined in the Mt. Vernon Opposition. On September 7, 2022, the Bankruptcy Court held a hearing to consider the Hoffmann Stay Relief Motion and directed the parties to proceed with mediation before the Trustee.

Hoffmann, Mt. Vernon and the Debtor proceeded to mediation of the Data Breach Action before the Trustee. A resolution has been reached for the Claims being asserted therein, which is incorporated into the treatment of the Claims of the Class 2 Creditors.

From a business end, the Debtor has been engaged in efforts to generate new business and reduce its operating expenses, to assure that that the Reorganized Debtor will be able to meet its funding obligations under the Plan.

**1.10    Projected Recovery of Avoidable Transfers.**

The Debtor has not yet completed its investigation with regard to pre-petition transactions. The Debtor anticipates completing its investigation by March 31, 2023. If you are a non-insider Unsecured Creditor who received a payment or other transfer of property within 90 days of the Petition Date, the Debtor may seek to avoid such transfer.

## ARTICLE 2
## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a Class for purpose of payment. For example, Administrative Expenses Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various Classes and describes the treatment each Class will receive. The Plan also states whether each Class of

Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in Classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts a plan when more than one-half in number and at least two-thirds in dollar amount of the allowed claims that actually vote, vote in favor of the plan. Also, a class of equity interest holders accepts a plan when at least two-thirds in amount of the allowed equity interest olders that actually vote, vote in favor of the plan. A class that is not impaired is deemed to accept a plan.

**2.1** **Unclassified Claims.**

Certain types of claims are automatically entitled to specific treatment under the Code. For example, administrative expenses are not classified. They are not considered impaired, and holders of such claims do not vote on a plan. They may, however, object if, in their view, their treatment under the plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.  Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or Bankruptcy Court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court. With the exception of Kroll, the Debtor will pay half of the Administrative Expenses on the latter of (a) the Effective Date or (b) the date of entry of an order by the Court approving allowances. The remaining half of the Administrative Expense shall be paid on or before September 18, 2023.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and the Creditor.

2. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the Chapter 11 Case. Requests for payment of these fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's approximate Administrative Expenses, and their proposed treatment under the Plan:

| Type | Approximate Amount Owed | Proposed Treatment |
|---|---|---|
| Norris McLaughlin, P.A., attorneys for the Debtor | $120,000 | Half of the claim shall be paid on the latter of the Effective Date or the date of entry of an order by the Court approving allowances. The remaining half of the claim shall be on or before September 18, 2023. |
| Zane & Fernandes, accountants for the Debtor | $8,370 | Half of the claim shall be paid on the latter of the Effective Date or the date of entry of an order by the Court approving allowances. The remaining half of the claim shall be on or before September 18, 2023. |
| Heidi Sorvino, Subchapter 5 Trustee | $43,000 | Half of the claim shall be paid on the latter of the Effective Date or the date of entry of an order by the Court approving allowances. The remaining half of the claim shall be on or before September 18, 2023. |
| Kroll (Claims Agent) | $2,907 | The claim shall be paid on the Effective Date. |
| TOTAL | $174,277 | |

**2.2** **<u>Classes of Claims and Equity Interests</u>.**

The following are the Classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of General Unsecured Claims

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

| Class # | | Description | Impairment | Treatment |
|---|---|---|---|---|
| 1 | | Allowed General Unsecured Claims of Creditors exclusive of those whose claims are included in Class 2. | Impaired | To be paid in annual distributions of Reorganized Debtor's income after expenses of operation, beginning one year after the Effective Date for a |

6

| | | | | |
|---|---|---|---|---|
| | | | | period of three years. |
| 2 | | Allowed Claims of Models for damages as a result of a data breach by the Debtor as identified on Exhibit A. | Impaired | Each holder of an Allowed Class 2 Claim shall receive payment in the amount of $201.23 upon (a) execution of a W-9 tax form, (b) execution of a release, and (c) providing Mt. Vernon, the Debtor's insurance carrier, with certain Medicare information (the "Class 2 Requirements"). In addition, subject to an order of this Court, counsel for the Class 2 Claimants shall receive payment from Mt. Vernon of up to $33,000 of attorney fees and costs. All amounts due on the Class 2 Claims shall be paid by Mt. Vernon in full satisfaction of the claims raised in the Data Breach Action. Mt. Vernon shall be provided a Third Party Release as provided herein. After confirmation of this Amended and Restated Plan, each holder of an Allowed Class 2 Claim shall receive a notice with further information about the Class 2 Requirements. Upon confirmation of the Plan, Hoffmann's attorneys will file a stipulation of discontinuance in the Data Breach Action. |

B. Class of Equity Interest Holder.

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders.

The following chart sets forth the Plan's proposed treatment of the Class comprised of the Debtor's sole Equity Interest holder.

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | Equity Interest Holder | Unimpaired | Equity Interests shall be retained under the Plan |

### 2.3 Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both a debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these type of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts and Unexpired Leases.

*Assumption of Executory Contracts and Unexpired Leases.*

The Executory Contracts shown on Exhibit "D" shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Exhibit "D" also lists the cure amount owed under the executory contract, if any, and how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or Executory Contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

*Rejection of Executory Contracts and Unexpired Leases.*

The Debtor will be conclusively deemed to have rejected all other Executory Contracts and/or unexpired leases not expressly shown on Exhibit "D", or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other

party to the contract or lease will be treated as an Unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract or unexpired lease is thirty days after the Confirmation Date. Any Claim based on the rejection of an Executory Contract will be barred if a proof of claim is not timely filed.**

### 2.4  Means for Implementation of the Plan.

The payments due at Confirmation under the Plan will be funded by the Debtor's cash on hand and future cash flow. Commencing one year after the Effective Date and continuing annually for a total period of three years, the Debtor shall commence its distributions to Class One Creditors. Cash flow after payment of all expenses of operation will be allocated to the payment of Allowed Unsecured Claims on a *pro rata* basis.

Class 2 Creditors shall be paid after the Effective Date, within thirty (30) days of each Class 2 Creditors' satisfaction of the Class 2 Requirements.

On the Effective Date, all property of the Debtor, tangible, and intangible, including, without limitation, licenses, furniture, fixtures, and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Reorganized Debtor.

The officers of the Debtor immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtor on and after the Effective Date.

### 2.5  Payments.

If the Plan is confirmed, payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a) except that the Class 2 Creditors shall be paid by the Class 2 Administrator. Once the Trustee's service is terminated under § 1183(c), the Reorganized Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

### 2.6  Tax Consequences of the Plan.

Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult With Their Own Accountants, Attorneys, and/or Advisors.

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues the Plan may present. The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the tax laws include many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Generally speaking, a holder of a claim which is subject to taxation in the United States (a "Taxpayer-Claimant") will realize income or loss for federal and state income tax purposes if its claim is paid, unless such income or loss has previously been recognized, to the extent that

such a payment would have created income or loss if paid by a debtor outside the jurisdiction of the Bankruptcy Court.

A Taxpayer-Claimant which receives nothing or less than the full amount with respect to its claim under a plan or in liquidation will realize a loss for federal and state income tax purposes to the extent that the Taxpayer-Claimant's tax basis in the claim exceeds its recovery, except to the extent that a loss with respect to such claim has previously been recognized.

### 2.7 Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.

The Debtor has provided projected financial information, which is set forth in attached Exhibit "E." Based upon the Debtor's estimate of total Claims against the estate and projected funds available after payment of the Debtor's expenses, the Debtor anticipates that it will be able to pay 100% of Allowed Creditor Claims in Class One.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1 Ability to Fund Plan.

The Debtor believes that it will have enough cash on hand on the Effective Date to pay all expenses that are entitled to be paid on that date.

The Debtor's financial projections reflect that the Debtor will be able to pay the distributions to Class One Creditors as proposed in its Plan. The final Plan payment is to be paid on the third anniversary of the Effective Date.

The amounts set forth in the attached Exhibit "D" are projections only. Thus, the total dividend to Class One Creditors may be less than projected, depending upon the profitability of the Reorganized Debtor.

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit "E."

# ARTICLE 5
# DISCHARGE

## 5.1 Discharge.

If the Plan is confirmed, the Debtor shall be discharged of all debts that arose prior to the Petition Date in accordance with and to the extent provided under § 1191 of the Bankruptcy Code.

## 5.2 Release to Mt. Vernon.

Pursuant to Bankruptcy Code section 1123(b) and to the fullest extent allowed by applicable law, for good and valuable consideration, on and after the Effective Date, Mt. Vernon and its affiliates, parents, subsidiaries, predecessors, successors and assigns, and all officers, directors, shareholders, members, attorneys, trustees, administrators, agents, representatives, reinsurers, and employees (the "Mt. Vernon Releasees") are deemed released and discharged by the Debtor, its estate, the reorganized Debtor, holders of Claims against the Debtor (including the 186 models identified on Exhibit A), and holders of interests in, the Debtor, and their heirs, predecessors, successors and assigns, and all agents, attorneys (including Stephanie Hoffman's counsel, the Blau Leonard Law Group, LLC), and representatives employed thereby (the "Releasing Parties") from any and all claims and causes of action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Releasing Parties, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or interest in, the Debtor or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Data Breach alleged in the Data Breach Action. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this paragraph do not release the Mt. Vernon Releasees from any post-Effective Date obligations under the plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release, and further, shall constitute the Bankruptcy Court's finding that the release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Mt. Vernon Releasees, including, without limitation, the Mt. Vernon Releasees' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the Claims released; (e) in the best interests of the Debtor and its creditors; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to this release.

## 5.3 Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the plan vests all property of the estate in the reorganized debtor, and (ii) after confirmation of the plan, the property dealt with by the plan is free and clear of all Claims.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the reorganized debtor acquires, as well as earnings from services performed by the reorganized debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Reorganized Debtor shall remain in possession of all property of the estate.

### 5.4 Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor, the Reorganized Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 5.5 Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 5.6 Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under § 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 5.7 Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 5.8 Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a) of the Bankruptcy Code. However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under § 1191(a) of the Bankruptcy Code, the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under § 1191(b) of the Bankruptcy Code, the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**5.9** **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 6
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its Creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any Creditor of the Debtor whose Claim is IMPAIRED under the Plan is entitled to vote, if either (i) the Creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the Creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any Claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Creditor to vote upon the Creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Under the Plan, all classes of creditors are impaired and, thus, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address: **MELISSA A. PENA, ESQ., NORRIS McLAUGHLIN, P.A., 7 TIMES SQUARE, 21st FLOOR, NEW YORK, NEW YORK, 10036.**

**How Do I Determine When and How Much I Will Be Paid?** The Debtor has provided cash flow projections reflecting the amount it anticipates will be available to fund distributions on Allowed Unsecured Claim in Class One. If available funds are less than anticipated distributions shall be made to Creditors *pro rata*, based on the amount of their Claim.

## ARTICLE 7
## DEFINITIONS

**7.1** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**7.2** **Administrative Claimant:** Any person entitled to payment of an Administration Expense.

**7.3** **Administrative Expense:** Any cost or expense of administration of the Chapter 11 Case entitled to priority under § 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against the Debtor's estate under Chapter 123, Title 28, United States Code.

**7.4** **Allowed Claim:** Any claim against the Debtor pursuant to § 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**7.5 Allowed General Unsecured Claim:** An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**7.6 Bankruptcy Code or Code:** The Bankruptcy Reform Act of 1978, as amended and codified as title 11, United States Code.

**7.7 Bankruptcy Court:** The United States Bankruptcy Court for the Southern District of New York.

**7.8 Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**7.9 Chapter 11 Case:** This case under chapter 11 of the Bankruptcy Code in which Debtor is the Debtor-in-Possession.

**7.10 Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**7.11 Class:** A category of holders of Claims or Interests which are substantially similar to the other Claims or Interests in such class.

**7.12 Class 2 Administrator:** Atticus Administration LLC.

**7.13 Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**7.14 Confirmation Hearing:** The hearing to be held on _____, 2023 to consider confirmation of the Plan.

**7.15 Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**7.16 Creditor:** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

7.17 **Debtor and Debtor-in-Possession:** Major Model Management, Inc., the debtor-in-possession in this Chapter 11 Case.

7.18 **Disputed Claim:** Any Claim against the Debtor pursuant to § 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

7.19 **Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

7.20 **Effective Date:** Fifteen days after the Confirmation Order becomes a final order.

7.21 **Equity Interest:** An ownership interest in the Debtor.

7.22 **Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

7.23 **Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

7.24 **Petition Date:** The date the Debtor's chapter 11 petition for relief was filed, which was February 11, 2022.

7.25 **Plan:** This Small Business Debtor's First Amended and Restated Plan of Reorganization Under Subchapter V of Chapter 11 of the Bankruptcy Code either in its present form or as it may be altered, amended, or modified from time to time.

7.26 **Reorganized Debtor:** The Debtor after the Effective Date.

7.27 **Schedules:** Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

7.28 **Subchapter V Trustee:** Heidi Sorvino, the Subchapter V Trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), or the order confirming the Plan.

7.29 **Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 Case which is not a secured Claim.

MAJOR MODEL MANAGEMENT INC.

By: _____
Guido Dolci, President

Dated: March 20, 2023

16